**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

DEBORAH N. PARKER,

Plaintiff,

v. CIVIL ACTION NO. 5:25-cv-00424

FIRST-CITIZENS BANK & TRUST COMPANY,

Defendant.

**MEMORANDUM OPINION AND OPINION ORDER**

Pending is Defendant First Citizens Bank & Trust Company's ("FCB") (1) Motion for Summary Judgment [ECF 35], filed June 5, 2026. Plaintiff Deborah N. Parker ("Ms. Parker") responded in opposition to FCB's Motion for Summary Judgment [ECF 37], on June 22, 2026, to which FCB replied [ECF 38] on June 26, 2026.

**I.**

In January 1993, Ms. Parker began working for the Bank of White Sulfur Springs, which was later acquired by FCB. [ECF 35-4 at 7]. In December 2017, Ms. Parker was promoted to the role of Manager of Retail Banking ("MRB") for the "Allegheny Cluster," a subset of FCB's "Virginia Valleys" market. [ECF 35-7 at 8].

From the fall of 2022 through early 2024, all MRBs in the Virginia Valleys market -- including Ms. Parker -- were supervised by interim Area Executive Greg Burnette. FCB evaluates the performance of MRBs, like Ms. Parker, under a "three-legged stool approach" focused upon productivity, partner goals, and personal development.

FCB evaluates a MRB's productivity via a scorecard which considers loan

production, balance sheet items, wealth, and investor services. FCB considers "a total score of 3.0" to be acceptable and considers any score below to indicate a need for improvement. [ECF 36 at 3 (citing ECF 35-7 at 29)]. Further, FCB considers a score below 2.0 to indicate "severe underperformance." [ECF 36 at 3 (citing ECF 35-7 at 21)]. The scores awarded to all MRBs are combined to determine the average score of all MRB's employed by FCB. [*Id.* at 3] The record contains the scores from twenty-one of Ms. Parker's productivity scorecards ranging from February 2022 through December 2023. [*Id.* at 4-9.] While her average score throughout her 2022 scorecards was 2.49 indicating a need for improvement, her scores in 2023 dropped drastically to an average of 1.6, indicating a trend of severe underperformance. *Id.* Throughout 2023, Ms. Parker was consistently among the least three productive MRBs. *Id.* She ranked as the least productive MRB for 6 of the 11 months for which scores were provided. *Id.*

As a result of this underperformance, on October 14, 2023, Mr. Burnette placed Ms. Parker on a Performance Improvement Plan ("PIP") for a period of sixty days. [*Id.* at 8]. In the PIP, Mr. Burnette identified Ms. Parker's (1) "Leadership and Team Management," (2) "Talent Development and Coaching," and (3) "Change Management Leader" as "areas for improvement." [*Id*. at 8 (citing ECF 35-1 at 2-3)]. Respecting Ms. Parker's Leadership and Team Management, Mr. Burnette noted that she needed to (1) hold her team accountable for behavioral expectations, (2) ensure performance improvement plans were in place for low-performing associates, and (3) meet her cluster's goals for loan production, BSI, and checking deposit value for the fourth quarter. [*Id*.]. Respecting Ms. Parker's Talent Development and Coaching, Mr. Burnette noted that Ms. Parker needed to "engage in a minimum of two joint calls with associates each month for observation." [*Id*.]. Respecting Change Management Leader, Mr. Burnette noted that Ms. Parker needed to "[d]emonstrate a willingness to employ new ideas and step away from behaviors not

yielding results." [*Id.*].

On December 6, 2023, FCB HR Business Partner Sonja Sharpless sent an email to FCB HR Manager Queena Green noting FCB's "plan to most likely exit Deborah Parker." [ECF 35-22 at 3]. Ms. Sharpless indicated she needed to "manage this last potential dismissal," referencing the dismissal of Ms. Parker, "with eyes on all potential risks." [*Id.*]. Ms. Green responded that she will "help get this one across the finish line." [*Id.* at 2].

On December 13, 2023, Ms. Parker was placed on a written warning which noted that the Alleghany Cluster's performance continued to decline in "all measurable categories" following the end of the third quarter of 2023. [*Id*. at 9 (citing ECF 35-2 at 2)]. The same day, Ms. Parker submitted an appeal to her written warning, emphasizing her cluster's performance was hindered by (1) three associates -- including two managers -- having cancer, (2) significant partner turnover in the Merchant, Treasury Services, and Wealth departments, (3) Ms. Parker's "required participation in a separate, five-month associate lawsuit for the bank," and (4) Ms. Parker serving as a loan-producing associate while simultaneously managing 8 branches due to the cluster's "lack of an effective banker." [ECF 37 at 3-4 (citing ECF 35-1 at 4)].

Ms. Parker's appeal -- which mentioned neither age nor gender discrimination -- was assigned to Ms. Green. [ECF 36 at 10 (citing ECF 35-16 at 7); i*d.* (citing 35-4 at 16)]. On January 17, 2024, Ms. Green informed Karen Maurer, FCB Senior HR Advisor, the written warning would be upheld. [ECF 35-19 at 4]. Ms. Green testified this decision to uphold rested upon "the concerns [Ms. Parker] raised . . . not impact[ing] her ability to meet the performance expectations of her role holistically." [ECF 35-16 at 13].

On December 21, 2023, Thomas Cline accepted a position as FCB's permanent Area Executive for the Virginia Valleys market. His term of service began on January 8, 2024.

[ECF 36 at 10 (citing ECF 35-20 at 7)]. Prior to Mr. Cline accepting his new position, he was informed by FCB Regional Executive Vice President Bob Roberts of Ms. Parker's disciplinary status. [ECF 37 at 9 (citing ECF 35-8 at 7)]. On February 13, 2024, Mr. Burnette terminated Ms. Parker's employment. [ECF 35-7]. She was fifty-three years old. [ECF 36 at 10 (citing ECF 35-4 at 4); ECF 37 at 5, 6].

In the month prior to Ms. Parker's termination, Mr. Cline and FCB's recruiting team identified, evaluated, and interviewed candidates to fill a vacant MRB position for the "Roanoke Cluster." [ECF 35-20 at 9-10, 14]. The vacancy was posted. [*Id*. at 11]. Matt Mandel applied and interviewed, but FCB declined to offer him the job. [*Id*. at 15-16].

Following Ms. Parker's termination, Mr. Cline was charged with hiring her replacement. [*Id*. at 18]. The newly vacant Alleghany Cluster MRB position was not advertised. [*Id*. at 14]. Approximately three weeks after Ms. Parker's termination, Mr. Cline hired Mr. Mandel to fill the vacant Alleghany Cluster MRB position. [ECF 37 at 5; ECF 36 at 19]. At the time Mr. Mandel was hired, he was 41 years old. [ECF 37 at 5; ECF 38 at 3]. Mr. Mandel was not working for FCB prior to being hired as the MRB for the Alleghany Cluster. [ECF 35-20 at 14].

On June 10, 2025, Ms. Parker instituted this action against FCB in the Circuit Court of Greenbrier County, asserting claims of (1) age discrimination, and (2) gender discrimination in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code §§ 16B-17-1, 16B-17-12. [ECF 1-1].[1] On July 10, 2025, FCB removed. [ECF 1]. On June 5, 2026, FCB moved for

---

[1] FCB moved for summary judgment on all claims. Inasmuch as Ms. Parker failed to satisfy her shifted summary-judgment burden on that claim in her response brief -- much less mention it -- FCB suggests in reply that Ms. Parker "abandons her sex discrimination claim entirely . . . ." (ECF 38 at 1). Based upon the foregoing, the Court concludes FCB is entitled to summary judgment on the gender discrimination claim. Furthermore, Ms. Parker's complaint contends "to the extent Defendant is not subject to the West Virginia Human Rights Act" FCB has violated a

summary judgment. FCB asserts (1) Ms. Parker has failed to demonstrate causation and hence lacks a prima facie case, (2) FCB terminated Ms. Parker's employment due to her "sustained unacceptable performance," [*Id*. at 16], (3) Ms. Parker cannot show that FCB's "reason for her termination was pretextual," [*Id*. at 18], and (4) Ms. Parker's alternative claim that FCB violated a substantial public policy in West Virginia against age and gender discrimination should be dismissed because FCB is subject to the WVHRA. [*Id*. at 20]. In response, Ms. Parker contends (1) she has established a prima facie case of discrimination, [ECF 37 at 6], and (2) FCB's identification of "broad failures" in her performance is conclusory, subjective, and lacks objective evidence of wrongdoing. [*Id*. at 10].

**II.**

### *A. Governing Standard*

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores*, Inc., 888 F.3d 651,

substantial public policy. [ECF 1-1 at 3,4]. Because it is uncontested that FCB is subject to the WVHRA Ms. Parker's alternative public policy claims are declared MOOT.

659 (4th Cir. 2018).

"The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment. However, "a nonmoving party cannot avoid summary judgment merely by asserting that the moving party is lying. Rather, Rule 56 requires a nonmoving party to produce specific facts that cast doubt on a moving party's claims or raise significant issues of credibility." *Thompson*, 582 F. Supp. 3d at 369 (quoting *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61, 459 S.E.2d 329, 338 (1995)).

### *B. FCB's Motion for Summary Judgment*

#### 1. Ms. Parker's Prima Facie Case

The WVHRA prohibits employers from discriminating based on certain protected characteristics, including gender and age. W. Va. Code § 16B-17-2. WVHRA claims "are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise." *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 482, 457 S.E.2d 152, 159 (1995), *holding modified by Dodrill v. Nationwide Mut. Ins. Co.*, 201 W. Va. 1, 9, 491 S.E.2d 1, 9 (1996). The relevant framework is derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) under which the plaintiff "must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse

decision would not have been made." *Knotts v. Grafton City Hosp.*, 237 W. Va. 169, 176, 786 S.E.2d 188, 195 (2016). An adverse decision "is an act that adversely affects the 'terms, conditions, or benefits' of one's employment." *Thompson v. CSX Transportation, Inc.*, 582 F. Supp. 3d 355, 364 (S.D. W. Va. 2022) (quoting *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650–51 (4th Cir. 2002)).

"The 'but-for' test is 'merely a threshold inquiry, requiring only that [the employee] show an inference of discrimination.'" *Id.* (citing *Knotts* 237 W.Va. at 176, 786 S.E.2d at 195). Direct proof of discrimination is not always available; therefore, a plaintiff need only

> show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

*Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 170–71, 358 S.E.2d 423, 429–30 (1986). While this is a threshold inquiry, a plaintiff's "own, self-serving testimony" is insufficient "to establish a nexus between his termination and his status as a protected class." *Thompson*, 582 F. Supp. 3d at 365.

In cases involving age discrimination, a plaintiff "may satisfy the third prong of the prima facie age discrimination test . . . by presenting evidence that he/she was replaced by a 'substantially younger' employee." *Knotts*, 237 W. Va. at 179, 786 S.E.2d at 198. The Supreme Court of Appeals of West Virginia has held "[t]he term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." *Id.* (quoting *Coryell v. Bank One Tr. Co. N.A.*, 101 Ohio St. 3d 175, 181, 803 N.E.2d 781, 788 (2004)). While there is no bright line rule "'[a]ge differences

of ten or more years have generally been held to be sufficiently substantial' to satisfy the 'substantially younger' rule." *Id.* (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).

Once the plaintiff establishes the prima facie case "the burden of production shifts to the defendant to offer a 'legitimate, nondiscriminatory reason for the challenged employment action.'" *Thompson*, 582 F. Supp. 3d at 363 (quoting *Barefoot*, 193 W. Va. at 483, 457 S.E.2d at 160). The reason provided "need not be a particularly good one . . . [t]he reason can be any other reason except that the plaintiff was a member of a protected class." *Conaway*, 178 W. Va. at 171, 358 S.E.2d at 430. "It is not for this court . . . to direct the business practices of any company . . . nor [is it] the function of this court to second guess the wisdom of business decisions." *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992).

If the defendant demonstrates such a reason "the plaintiff must demonstrate by a preponderance of the evidence that defendant's reasons were a pretext for discrimination." *Id.* at 941. "A proffered reason is a pretext if it was not 'the true reason for the decision[.]'" *W. Virginia Inst. of Tech. v. W. Virginia Hum. Rts. Comm'n*, 181 W. Va. 525, 531, 383 S.E.2d 490, 496 (1989) (quoting *Conaway*, 178 W. Va. at 171, 358 S.E.2d at 430). To demonstrate pretext "a plaintiff need not show more than the articulated reasons were implausible and, thus, pretextual." *Barefoot*, 193 W. Va. at 487, 457 S.E.2d at 164. Pretext may be established through direct or circumstantial evidence. *Thompson*, 582 F. Supp. 3d at 364. The plaintiff's failure to come forth with evidence rebutting the defendant's explanation may entitle the defendant to judgment as a matter of law. *Barefoot*, 193 W. Va. at 483, 457 S.E.2d at 160.

There is no dispute that FCB is subject to the WVHRA. [ECF 36 at 20]. Ms. Parker has clearly satisfied the first two elements of her prima facie case. As a 53-year-old woman, Ms.

Parker was a part of a protected class of all individuals over the age of 40. *See* W. Va. Code §§ 16B-17-2, -17-3. Further, the act of terminating an employee is clearly an adverse decision that impacts employment. *Thompson*, 582 F. Supp. 3d at 364. Thus, only the third element of the prima facie age discrimination test is at issue. As previously mentioned, FCB claims Ms. Parker has failed to satisfy the but-for causation test required to make a prima facie case of discrimination under the WVHRA. [ECF 36 at 13]. To demonstrate this element, Ms. Parker relies on emails between Ms. Sharpless and Ms. Green in which Ms. Sharpless references FCB's "plan to most likely exit Deborah Parker" and Ms. Green's response that she understood the request to help "get this one across the finish line." [ECF 37 at 4]. Additionally, Ms. Parker contends discriminatory intent may be inferred from FCB's failure to adhere to its own policies with respect to PIP plans and its decision to replace Ms. Parker with an employee who is substantially younger. [ECF 37 at 6-11].

The emails between Ms. Sharpless and Ms. Green may be evidence of FCB's plan to terminate Ms. Parker. They do not "sufficiently link the employer's decision and the plaintiff's status *as a member of a protected class*[.]" *Conaway*, 178 W. Va. at 170, 358 S.E.2d at 429–30 (emphasis added). The emails reveal merely that there was a plan to terminate Ms. Parker before the expiration of her PIP plan. Detecting an age-based reason under these circumstances would not amount to a reasonable inference but, instead, an entirely manufactured cause rooted in pure speculation and not the evidentiary record. One would have to guess even if Ms. Parker's age was known by Mr. Burnette. Ms. Parker has thus failed to submit direct proof of discrimination.

To salvage that vast gap, she urges discrimination may nonetheless be inferred from the failure of FCB to observe its own policies relating to PIP plans and employee discipline. [ECF 37 at 8]. In support, Ms. Parker cites two opinions from United States Court of Appeals for the

Fourth Circuit. *See Holloway v. Maryland*, 32 F.4th 293 (4th Cir. 2022); *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244 (4th Cir. 2025). Neither case provides support for Ms. Parker, as they merely represent a failure to observe one's own policies *can* provide evidence of discriminatory intent, not that it will automatically give rise to such an inference.

For example, in *Wannamaker-Amos* our Court of Appeals explained as follows:

> Evidence that a company failed to follow its own disciplinary policies in firing an employee can also be *probative of pretext*. That is because an employer's "extreme overreaction" to a minor infraction may suggest that the relevant decisionmaker was "looking for a reason to get rid of [the plaintiff]" on discriminatory grounds.

*Wannamaker-Amos*, 126 F.4th 244, 260–61 (citations omitted) (emphasis added).

Under Ms. Parker's reading of *Holloway*, a defendant's failure to adhere to its own policies will, on its own, give rise to an inference of discrimination. No case supports that proposed rule. The decision in *Holloway*, however, illustrates why it lends no support to Ms. Parker. The Court of Appeals held the plaintiff (a black man) created a plausible inference that racial discrimination drove his termination decision by mustering three key facts: (1) the budget oversight for which he was fired was caused by another employee who was white, (2) the plaintiff's predecessor was white and was never disciplined for similar conduct, and (3) the defendants failed to adhere to their own human resources policies of placing an employee on a PIP before termination. *Holloway*, 32 F.4th at 299.

Unlike the plaintiff in *Holloway*, Ms. Parker has not presented any evidence individuals outside of her protected class have received more favorable treatment. Furthermore, the decision to terminate Ms. Parker cannot be said to be the product of FCB's "'extreme overreaction' to a minor infraction," as Ms. Parker's shortcomings are well documented in the troublesome marks she received on her scorecard, which were below acceptable for nearly two consecutive years. [ECF 36 at 4-9]. It follows that while a defendant's failure to adhere to its own

policies *may* give rise to an inference of discrimination, they simply do not do so here.

Next, Ms. Parker contends discrimination may be inferred by her replacement with a substantially younger individual. [ECF 37 at 6]. While the Supreme Court of Appeals has noted "[a]ge differences of ten or more years have generally been held to be sufficiently substantial," it nevertheless concluded the ultimate definition of substantially younger "is best determined after considering the particular circumstances of each case." *Knotts*, 237 W. Va. at 179, 786 S.E.2d at 198. Evidence that a plaintiff was replaced by a substantially younger employee is sufficient to "set out a prima facie case of discrimination." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997).

The Court is not persuaded "the particular circumstances" of this case warrant the inference that Ms. Parker's replacement with an individual twelve years her junior, authoritatively establishes he was substantially younger than her. Viewing the facts in a light most favorable to Ms. Parker, however, the Court is willing to proceed with the analysis and conclude that replacement sufficed to raise an inference of discrimination.

**2. FCB's non-discriminatory reason for terminating Ms. Parker**

The burden now shifts to FCB to offer some nondiscriminatory reason for terminating Ms. Parker. *Conaway*, 178 W. Va. at 171, 358 S.E.2d at 430. "The reason can be *any other reason* except that the plaintiff was a member of a protected class." *Id.* In response, FCB has advanced a host of nondiscriminatory reasons. According to the "productivity" leg of FCB's three-legged stool approach to employee evaluation, Ms. Parker had long been underperforming in her MRB role. [ECF 36 at 4-9]. Of the 21 score cards published pertaining to Ms. Parker's performance between February 2022 and November 2023, 20 had "below acceptable scores" with nine scores

indicating "severe underperformance." [*Id.*] Ms. Parker was also regularly ranked among the least productive MRBs.[2] [*Id.*] Finally, 86% of the associates reporting to Ms. Parker received "below acceptable" productivity scores, with 62% receiving "severe underperformance" scores. [*Id.* at 9]. FCB also contends Ms. Parker "was also failing to succeed in the other two" legs of FCB's employee evaluation stool.

In sum, FCB contends Ms. Parker was terminated "[d]ue to her continued inability to achieve performance improvement." [*Id.* at 10]. The score cards and monthly evaluations in the record indicate this prolonged inability to improve. Accordingly, because FCB has presented a nondiscriminatory reason for Ms. Parker's termination, Ms. Parker must demonstrate FCB's proffered reason is merely pretextual.

**3. Ms. Parker is unable to show FCB's proffered reason is pretextual**

"To counter Defendant's non-discriminatory reason for his termination, Plaintiff must point to some direct or circumstantial evidence that Defendant's reasons are pretextual." *Thompson*, 582 F. Supp. 3d at 369. "Plaintiff's 'failure to come forth with evidence rebutting the defendant's explanation may entitle the defendant to judgment.'" *Id.* (quoting *Barefoot*, 193 W. Va. at 483, 457 S.E.2d at 160). "Further, self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Id.*

To rebut FCB's non-discriminatory reason for her termination, Ms. Parker contends (1) FCB's "broad failure" allegations are conclusory and lack objective evidence of wrongdoing, (2) summary judgment is improper when varying inferences may be drawn from the evidence in

---

[2] Ms. Parker was among the two least productive employees for sixteen months and was the least productive employee for seven months.

discrimination claims, and (3) the jury may conclude the discipline levied against Ms. Parker was manipulated in order to achieve her termination. *Law v. Monongahela Power Co.*, 210 W. Va. 549, 557, 558 S.E.2d 349, 357 (2001).

Ms. Parker's first contention is that FCB's allegations "depend heavily upon the subjective feelings of management as opposed to objective evidence of wrongdoing" [ECF 37 at 10]. Further, Ms. Parker contends FCB's own exhibits show meaningful strengths, improvement efforts, and concrete explanations for her shortcomings. [*Id.* at 12]. Ms. Parker was evaluated based on the "three-legged stool" approach which considered, as noted, productivity, partner goals, and personal development. [ECF 36 at 2-3]. "Regarding the first 'leg' of the stool -- productivity -- MRBs are evaluated via a scorecard program, which is an objective monthly assessment of sales productivity across multiple categories, including loan production, balance sheet items, wealth, and investor services." *Id.* at 3. As previously discussed, Ms. Parker's productivity scores were consistently among the lowest of all MRBs employed by FCB. *Id.* at 4-9.

"Regarding the second leg of the stool -- Partner Goals -- MRBs are evaluated on internal partnerships with other lines of business and cross-selling activities." The respective partnerships evaluated are explicitly included in MRB's performance reviews. [ECF 35-13 at 4]. Between May and December 2023 Ms. Parker was "on pace" with, at most, 22% of FCB's partner goals. During four of those months, Ms. Parker was not "on pace" with a single partner goal of FCB.

In sum, there is a lengthy paper trail documenting Ms. Parker's poor performance, which is reflected in objective standards such as monthly productivity scores and failing to meet explicit partner goals. This demonstrates as a matter of law that FCB's decision to terminate Ms. Parker was based, at least in part, on objective criteria. The cases Ms. Parker cites in her response

are distinguishable. [ECF 37 at 11 (citing *Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496, 1506 (4th Cir. 1988))]. Ms. Parker had prolonged performance issues and was consistently one of the least productive MRBs employed by FCB.

Next, Ms. Parker contends summary judgment is improper because varying inferences may be drawn from the evidence. [ECF 37 at 9] In support, Ms. Parker cites *Longerbeam v. Shepherd Univ.*, 252 W. Va. 264, 922 S.E.2d 264 (2024). In *Longerbeam*, the plaintiff, a 48-year-old police officer, presented evidence he was "continuously treated disparately compared to younger officers," and was held to a higher standard in terms of responsibilities. Specifically, the plaintiff asserted "the younger officers did not routinely utilize their body camera, did not maintain department vehicles or fill them with gas, while another was routinely late." *Id.* In light of these facts, the Supreme Court of Appeals reversed and remanded the circuit court's conclusion the plaintiff failed to present a prima facie case of age discrimination. *Longerbeam*, 252 W. Va. at 284, 922 S.E.2d at 284.

Contrasting the *Longerbeam* case, this Court has found Ms. Parker presented a prima facie case of age discrimination due to the fact she was replaced by a "substantially younger" employee. Further, Ms. Parker has not presented any evidence she was treated disparately in any way as compared to younger employees, or that younger employees were held to different standards. Therefore, *Longerbeam* is distinguishable.

The Court understands Ms. Parker's 2022 annual review indicated she "exceed[ed] goals in wealth management and non-interest income" and Mr. Burnette "looked forward to the impact she will have on a broader team in 2023." Viewing the record in a light most favorable to Ms. Parker, she managed to exceed certain goals and was capable of doing her job, had employees with personal difficulties which hampered her ability to fully perform, and requested additional

guidance on how to improve from superiors. [ECF 37 at 3-4]. This, however, does not negate the continued downward trend in Ms. Parker's productivity scores as well as her continued failure to meet more than 22% of partner goals throughout 2023, both of which are well documented in the record.

Additionally, viewing the facts in a light most favorable to Ms. Parker, there was a plan within FCB regarding Ms. Parker's termination that began prior to the conclusion of her PIP plan. However, there is no "factual support in the record" beyond the age of Ms. Parker's replacement and her own "self-serving assertions" to suggest the reason for her termination was related to her age. *Thompson*, 582 F. Supp. 3d at 369. While her replacement being substantially younger than her gave rise to *an inference* of discrimination, her prima facie case was rebutted by FCB's non-discriminatory reasons for her termination. Ms. Parker has pointed to no additional evidence, direct or circumstantial, to prove "by a preponderance of the evidence that defendant's reasons were a pretext for discrimination." *Clay Printing Co.*, 955 F.2d at 941.

To conclude, while Ms. Parker has presented a prima facie case of age discrimination, she has failed to demonstrate by a preponderance of the evidence that FCB's non-discriminatory reason for her termination was pretextual. Accordingly, because Ms. Parker has failed to meet this burden, summary judgment is appropriate.

**III.**

Accordingly, the Court **GRANTS** FCB's motion for summary judgment **[ECF 35]**.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: August 27, 2026

Frank W. Volk
Chief United States District Judge